CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 0 7 2006

JOHN F. CORCORAN, CLERK
BY:
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Action No. 7:06CR00029 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| NATHANIEL LEE DAVIS, ) | By: Hon. Glen E. Conrad |
| ) | United States District Judge |
| Defendant. ) | |

This matter is before the court on the defendant's motion to suppress all of the evidence gathered from him on April 4, 2006. A hearing was conducted on Wednesday, June 28, 2006, at which the defendant and several witnesses testified. For the following reasons, the motion to suppress will be denied.

I. Introduction

Although certain incidents of the encounter are in dispute, it is clear that the defendant had contact on April 4, 2006 with several Roanoke City police officers, including Detective Clifford A. Helton, which resulted in the discovery of a quantity of crack cocaine. Detective Helton saw Nathaniel Davis on Melrose Avenue with a container of beer which Davis then deposited on the ground. Helton ordered Davis to stop and admonished him for littering and carrying an open container of alcohol. The defendant walked over to the officers pursuant to Helton's order. According to the defendant, the officer then began to search him by twisting his pants and patting down his pocket area. The government presented testimony from the officer that he asked the defendant if he could perform a pat down and the defendant turned around and raised his arms, as if to comply with the request.

After failing to identify any potential weapons, the officer stated that he requested permission to search the defendant's pocket, which the defendant refused. Both parties agree that a struggle ensued and that a package of crack cocaine was recovered from the defendant's pocket. The defendant was subsequently indicted for possession of the substance. The main issue presented to this court is whether the officer's statement that he did not anticipate finding a weapon on the defendant negates the reasonableness of the search.

## II. Summary of Testimony

Detective Aaron Helton testified that on April 4, 2006, he saw the defendant in the 1700 block of Melrose Avenue, an area he knew to be the site of frequent drug transactions. Upon spotting the defendant, Detective Helton pulled over his vehicle and observed the defendant with an open bottle of Miller High Life beer. The defendant poured out some of the contents of the bottle and then threw it on the ground. Helton chastised the defendant for littering, and told him to come over to where Helton was standing.

Helton explained that he asked the defendant if he could pat him down, to which the defendant responded by turning around and raising his arms. During the pat down, Helton felt a lump in the defendant's pocket. He asked for the defendant's permission to remove it. Instead of answering, the defendant shoved the officer who was accompanying Helton, causing a scuffle to ensue. The scuffle continued on the ground, whereupon Davis removed the package from his own pocket and began to crush it in his hand. The officers retrieved the package from him and found that it contained cocaine base. Davis was arrested and charged for the cocaine, possession of small quantity of marijuana, and littering.

Helton testified that he was familiar with the defendant prior to his interaction with him on April 4, 2006. Based on his previous encounters with the defendant, Helton explained that

2

because he had never found weapons on Davis before, he did not expect him to have a weapon on this occasion. Helton related that he was checking for weapons and drugs during the pat down.

Dominique Jenkins testified that she was present prior to and during the arrest of the defendant. She had spoken to Davis, a long-time friend, shortly before he encountered the police officers. Jenkins recounted that the officers drove up and began to search the defendant without really speaking to him. She also recalled that one of the officers told the defendant that he could not litter. Jenkins said that there were about five officers present, but only two or three of them approached the defendant, and that once they had apprehended him, it appeared as if they punched and kicked him. Jenkins also noted that she was familiar with the area and did not believe it to be a high crime area.

Nathaniel Davis testified that he gave no consent to be searched, that the police never asked him for his consent, and that he never raised his hands in acquiescence to a search. He stated that when the officer spoke to him, he walked back to where the officers were standing. At that point, the officer began twisting his pants and patting down his pocket. Davis said that the officers then threw him on the ground, breaking his little finger.

### III. Legal Standards and Analysis

Davis' chief contention is that the officer's candid testimony that he did not expect to find a weapon when he stopped Davis and patted him down revealed that the intrusion was an impermissible search falling outside the clear boundaries of Terry v. Ohio, 392 U.S. 1 (1968). The defendant is incorrect in this argument. Detective Helton was firmly within the bounds of Terry when he stopped Davis for the misdemeanor committed in plain view of the officer, in a high drug-trafficking area, and with the knowledge that the defendant had previously been

3

involved in the drug trade. See Adams v. Williams, 407 U.S. 143, 147, 92 S. Ct. 1921 (1972) ("[W]e reject respondent's argument that reasonable cause for a stop and frisk can only be based on the officer's personal observation...."); United States v. Wyatt, 133 Fed. Appx. 310, 312-13 (7th Cir. 2005) (unpublished decision) (including the officer's knowledge of the defendant's probationary status and prior offense as additional factors in the reasonable suspicion analysis); but see United States v. Sandoval, 29 F.3d 537, 542 (10th Cir. 1994) ("[E]ven knowledge of a person's prior criminal involvement (to say nothing of a mere arrest) is *alone* insufficient to give rise to the requisite reasonable suspicion." (emphasis added)).

Police officers need not have only their own safety, or that of others, in mind when they undertake a pat down pursuant to Terry. In Terry, the Court explained that "[w]e are now concerned with *more* than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed." Id. at 23 (emphasis added). Implicit in this statement is the Court's acknowledgment that investigating crime is still a critically important government interest, but in situations governed by Terry, otherwise impermissible intrusions are sanctioned to ensure officer safety. See also Minnesota v. Dickerson, 508 U.S. 366, 113 S. Ct. 2130 (1993) (holding that "police officers may seize nonthreatening contraband detected during a protective patdown search of the sort permitted by Terry"). However, in Dickerson, the Court cautioned that "[i]f the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid." Id. at 373.

The officer's testimony as to his expectation, at the time he commenced the pat down, that he would not find weapons on the defendant is troubling. Such an admission injects an element of difficulty into the otherwise clear matrix established by Terry because it suggests that

4

the search was calculated solely to recover contraband, not weapons. The defendant asserts that a search performed with an aim to uncovering contraband is only allowable upon arrest because it is more intrusive than one designed solely to uncover concealed weapons. Thus, the defendant contends that the officer's candor as to his reason for patting down Davis establishes that the search exceeded the scope of intrusions permissible under Terry.

In Dickerson, the Supreme Court made it clear that "so long as the officers' search stays within the bounds marked by Terry," any contraband discovered on the defendant's person may be seized. Id. at 373, 375-76 ("If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified...."). Importantly, Terry made it clear that officers performing a pat down are not limited to a search for firearms. See Terry, 392 U.S. at 29 (listing "guns, knives, clubs, or other hidden instruments for the assault of the police officer," as potential threats to officer safety and candidates for recovery in a pat down search). The thorny question presented here is whether, when the officer lacks the subjective expectation of discovering weapons, the officer necessarily conducts the search in a manner inconsistent with Terry. For the following reasons, with regards to the defendant's situation, the answer must be no.

In Adams v. Williams, 407 U.S. 143, 92 S. Ct. 1921 (1972), the Supreme Court held that:

> The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.... So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose.

5

Id. at 146. This statement of the rule suggests an objective standard for determining whether a given situation produces "reason to believe that the suspect is armed and dangerous." Id. Following Adams, the Court solidified its direction to the lower courts that "[n]othing in *Terry* can be understood to allow ... any search whatever for anything but weapons." Ybarra v. Illinois, 444 U.S. 85, 93-94, 100 S. Ct. 338 (1979) (confirming the "narrow scope" of Terry).[1]

Despite these precautions, Terry itself established an objective standard for reasonable suspicion. Terry, 392 U.S. at 27 ("The officer need not be absolutely certain that the individual is armed; the issue is whether *a reasonably prudent man in the circumstances* would be warranted in the belief that his safety or that of others was in danger."). The lower courts have consistently implemented this standard. See, e.g., United States v. Holmes, 376 F.3d 270, 277 n.3 (4th Cir. 2004) ("[W]hether an officer had reasonable suspicion ... is an objective inquiry...."); United State v. Bayless, 201 F.3d 116 (2d Cir. 2000) ("Reasonable suspicion is an objective standard; hence, the subjective intentions or motives of the officer making the stop are irrelevant.").

The defendant argues that the officer's belief that he would not find a weapon on the defendant negates the reasonableness of his search. Relying on United States v. Coletraine, 2005 WL 1926607 (W.D. Va. 2005), Davis asserts that the officer's testimony demonstrated that there was insufficient information to "cause a reasonably prudent person under the circumstances to believe that either his safety or the safety of others is in danger," because Detective Helton, unlike the officer in Coletraine, did not himself "believe[] that the individual [wa]s armed and

---

[1] The circumstances of Ybarra are quite distinct from those at issue here. In that case, the officers searched all of the patrons at a bar in spite of a search warrant stipulating that only "'Greg,' the bartender" was to be personally searched. Id. at 88. The officers had no basis upon which to form a reasonable suspicion that Ybarra was armed and presently dangerous. Id. at 92-93. Notably, the Court mentioned that the officers "neither recognized him as a person with a criminal history nor had any particular reason to believe that he might be inclined to assault them." Id. In the present case, of course, the officer recognized Davis as a person with both a criminal history and an inclination to resist, sometimes violently, police officers.

6

dangerous." Id. at *2. The defendant's reliance on the Court's statement is misplaced. The holding in Coletraine did not attempt to revise the objective standard for pat downs under Terry, and the case is distinguishable on its facts.[2] In Coletraine, the Court found the initial pat down of the defendant to be lawful; it was only due to the officer's over-manipulation of the object located in the defendant's pocket that the search exceeded the scope of Terry. See id. at *2. Thus, Coletraine does not support the defendant's assertion that the officer's subjective belief should trump the objective reasonableness of his actions.

There is a strong, well-established link between the drug trade and weapons. See, e.g., United States v. Grogins, 163 F.3d 795, 799 (4th Cir. 1998) ("[T]he connection between illegal drug operations and guns in our society is a tight one."). Furthermore, due to this positive correlation between violence and drug transactions, "it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction." United States v. Bustos-Torres, 396 F.2d 935, 943 (8th Cir. 2005). Detective Helton suspected Davis of involvement in a drug transaction. The encounter between the officers and Davis took place in a neighborhood where there is frequent drug activity. Detective Helton's subjective belief that Davis likely posed little danger to either Helton or those in the vicinity does not render a pat down inappropriate.

Under the circumstances as they presented themselves to the officers on April 4, 2006, a pat down to ensure that the defendant was not carrying weapons was reasonable. The fact that

---

[2]In fact, the Court cited United States v. Baker, 78 F.3d 135 (4th Cir. 1996) for the proposition that a reasonable, objective belief that a suspect may have a weapon is the standard for evaluating Terry searches. Id. at 137.

7

Detective Helton knew the defendant and, on the basis of his prior dealings with him, did not expect him to be armed does not undermine the objective reasonableness of the pat down.

## IV. Findings of Fact

1. Davis was littering on the evening of April 4, 2006.

2. Helton observed Davis littering and asked Davis to come over to him.

3. Helton asked Davis if he could pat him down.

4. Davis did not give consent to either a pat down or more extensive search of his person by the police officer.

5. Based on his prior experience with Davis, Helton did not believe that Davis typically possessed a firearm.

6. Helton patted Davis down and a scuffle ensued.

7. During the scuffle involving Davis and the police officers, Davis removed a package containing cocaine from his pocket.

8. The area in which this confrontation occurred is known as a high crime area and place of frequent drug transactions.

## V. Conclusions of Law

1. Detective Helton and the officers accompanying him had reasonable grounds to approach the defendant due to the littering offense committed in their presence on April 4, 2006.

2. The holding of Terry v. Ohio, 392 U.S. 1 (1968) gave the police officers the authority to pat down the defendant due to his presence in a high crime area, the misdemeanor offense he committed in plain view, and their knowledge of his prior criminal activity.

3. The discovery of the crack cocaine was not the product of an illegal search.

## Conclusion

For the foregoing reasons, the defendant's motion to suppress will be denied. The subjective opinion of the officer that the defendant was unlikely to be in possession of a weapon does not preclude the pat down from being reasonable under the circumstances. The defendant was in an area known as the site of frequent drug sales, had committed at least one misdemeanor, and was known to have been involved in prior drug activity. These factors created a reasonable suspicion that criminal activity may have been afoot such as to permit the officer to pat down the defendant to ensure the safety of the officer and those around him.

DATED this 6th day of July, 2006.

_____
United States District Judge